## LENA WELLS DOSSETT v. THE STATE.

No. 6504. Decided November 29, 1922.

**1.—Keeping a Disorderly House—Evidence—Hearsay.**

Where, upon trial of keeping a disorderly house, it was shown that upon the trial, over defendant's objection, the sheriff was permitted to testify that after two of the girls were placed in jail he had a conversation with one of them who told him that she had been living in defendant's house and had plied her vocation therein, the same was inadmissible and reversible error, it being purely hearsay.

**2.—Same—Rule Stated—Inmates—Disorderly House—Declaration.**

It is competent to show the conduct and conversation of the inmates and frequenters while in and about the house, and in some cases their conduct and conversation when away from the house may be shown as bearing upon their character, but this rule does not let in hearsay, and evidence of conduct not in the vicinity of the house.

Appeal from the County Court of Milam. Tried below before the Honorable W. G. Gillis.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200 and 20 days confinement in the county jail.

The opinion states the case.

R. *Lyles,* for appellant.

R. G. *Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted of keeping, a disorderly house, punishment being assessed at a fine of $200, and twenty days imprisonment in the county jail.

Only one point will be considered. On the night that appellant was arrested the officers made two visits to the house in question. On the first visit they found no women at the house with the exception of appellant, who told them there were no other girls there. About an hour and a half later the officers again visited the house, at which time they discovered two girls who were apparently undertaking to get away, being on the outside of the house at the time. These girls were arrested and placed in jail. Upon the trial, over objection, the sheriff was permitted to testify that after they were placed in jail he had a conversation with one of them who told him they came from Navasota and had lived in a bawdy house there; that she had been living in appellant's house since the morning of the day before and had piled her vocation in appellant's house on two occasions only; that she had been deceived about the condition of things at Cameron; that she had been told there was no trouble there and if he would let them go they would leave town and never come back; that he took them out of jail, and down to appellant's house where they got their clothes, and from there they were taken to the train; that they left town; that he had never seen them since, did not know who they were nor where they were. Appellant was not present at the time this conversation occurred. Objection was made to the recital of the statement on the ground that it was hearsay testimony, not in the presence of appellant and in no way binding upon her. As supporting the contention the testimony was admissible the State has cited, among other cases, Robbins, v. State, 40 Texas Crim. Rep., 523; Finn v. State, 132 S. W. Rep., 805; Novy v. State, 138 S. W. Rep., 139; Hickman v. State, 59 S. W. Rep., Davidson v. State, 173 S. W. Rep., 1037; Key v. State, 160 S. W. Rep., 354; Dimitri v. State, 155 S. W. Rep., 535. We have examined all of these carefully and have reached the conclusion that they do not support the State's contention. It will be found from an inspection of the cases in every instance the evidence objected to related to

matters which occurred in or about the house which was under investigation. There is no question but that in this State the conduct and conversation of the inmates of a house claimed to be disorderly may be shown, because in a sense it may be said that the conduct and conversation of the inmates is the *res gestae* of the business there being conducted and reflects the character of the house. It has been held many times that it may also be shown that inmates of the house have entered pleas of guilty to charges against them for being prostitutes. This is admitted for the purpose of establishing their character. Many of the cases, notably Key, v. State (*supra*), shown that the defendant signed the bonds of the women and interested himself in the charges against them. The general rule is stated in Corpus Juris, Volume 18, page 1259, as follows:

"It is competent to show the conduct and conversation of the inmates and frequenters while in and about the house, and in some cases their conduct and conversation when away from the house may be shown, as bearing upon their character. But this rule does not let in hearsay, and evidence of conduct not in the vicinity of the house has been held prejudicial error."

Courts have been very liberal not only in this State but in other jurisdictions in admitting evidence upon charges incident to the keeping of disorderly houses, but we know of no authority that has extended the liberality to the extent of admitting evidence similar to that complained of in the instant case. It was competent to show that the two women in question were seeking to escape from the vicinity of the house and also that they returned to the house and secured their clothing; but when the officer was erroneously permitted to detail the conversation had with one of the women, which to our minds was the most damaging evidence introduced in the trial of the case, and which appears to fall clearly under the hearsay rule, it becomes our duty to reverse. If the evidence complained of in this case was admissible then it would be permissible for a witness to state that six months before the arrest, at some place other than the house in question a woman had told him that she was a prostitute and had plied her vocation in the house. It would follow that such statements made at any time within the Statute of limitation could be admitted. We do not believe such an extension to be within the sound rule of evidence recognized by all the authorities even touching the investagation of disorderly houses.

For the error committed the judgment is reversed and the cause remanded.

*Reversed and remanded.*