David Oliver WANGLIE,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. CO–86–1453.

Court of Appeals of Minnesota.

Dec. 30, 1986.

David Oliver Wanglie, pro se.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Patrick W. Ledray, St. Louis Park City Atty., and Kenneth N. Potts, Asst. City Atty., Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

David Wanglie appeals from an order denying post-conviction relief. He was convicted for misdemeanor assault in violation of Minn.Stat. § 609.224, subd. 1 (1986) and reckless driving in violation of Minn. Stat. § 169.13, subd. 1 (1986) following a jury trial. He contends the trial court erred in (1) denying his request for a continuance, claiming he did not receive a *Rasmussen* notice, and (2) admitting evidence in violation of *Spreigl* notice requirements. We affirm.

## FACTS

At approximately 11:00 p.m. on June 21, 1984, Stanley Zahorsky, complainant, and Karen Mjolhus, appellant's former girlfriend, returned to Mjolhus' home from a date. As they approached, Mjolhus noticed a car similar to Wanglie's parked nearby. Zahorsky drove into Mjolhus' driveway, they went inside and returned to the street with flashlights.

As Zahorsky walked toward the car, the motor started and the lights came on. The driver drove toward Zahorsky, weaving and swerving and hit him. Zahorsky landed on the car's hood, rolled and grabbed the side mirror, getting a good look at the driver before falling to the pavement. Zahorsky identified appellant as the driver.

On July 10, 1984, a St. Louis Park police officer spoke with appellant at his place of employment. The officer read appellant a *Miranda* warning prior to the conversation, but did not arrest or place him in custody.

Appellant said he did not wish to talk to the officer. Before he left, however, the officer told appellant that Zahorsky, an attorney, was missing a legal file from his car and suggested the file be returned. Appellant then asked the officer what

would happen if the documents had been destroyed.

On October 14, 1984, the prosecuting attorney mailed appellant a *Rasmussen* notice as required by Minn.R.Crim.P. 7.01. The record shows this notice was sent to appellant's current address. He claims he did not receive such a notice. Appellant appeared, pro se, at an October 22, 1984, pre-trial conference. Although he said he would consider hiring an attorney, he also appeared pro se for his jury trial.

The trial court ruled that the State had properly sent a *Rasmussen* hearing notice to appellant. The court stated it would rule on the *Spreigl* issue when appropriate, and subsequently held that there was no *Spreigl* notice requirement.

At trial, Zahorsky testified he had been the victim of several recent incidents of harassment. On June 17 a legal file was stolen from his car while parked in Mjolhus' driveway. Both Mjolhus and Zahorsky received anonymous phone calls, and Zahorsky's neighbors and business associates received letters concerning his personal and financial affairs.

Mjolhus testified she broke up with appellant three weeks prior to the assault. Mjolhus said that appellant was upset when she ended their relationship and told her, "he wasn't able to stop seeing me and that he was having difficulty in allowing me to be away from him."

Michael Burns, Zahorsky's law partner, testified that he received an anonymous phone call on June 17 from a man who said, "Stan should stop seeing a long-haired blond lady," a description of Mjolhus. Burns said the caller also referred to the missing file.

Appellant admitted that his car was parked in front of Mjolhus' house on June 21, 1984. He explained he was waiting to speak with her about an anonymous letter he received. He said his car accidentally lurched forward and he didn't remember hitting anyone. He said he believed he swerved away from Zahorsky. He denied taking a file from Zahorsky's car. He also denied sending the anonymous letters.

On February 8, 1985, a jury found appellant guilty of fifth degree assault and reckless driving. He was sentenced on February 20, 1985. On March 7, 1985, he moved for a new trial under Minn.R.Crim.P. 26.04. The trial court denied the motion as untimely. On March 26, 1985, this court denied appellant's motion for an extension of time to file an appeal. On May 31, 1985, the supreme court denied appellant's petition for further review.

A hearing on appellant's petition for post-conviction relief took place on May 13, 1986, and relief was denied on August 12, 1986. This appeal followed.

### ISSUES

1. Did the trial court err by not holding an evidentiary hearing?

2. Did the trial court err in admitting evidence of statements to police without *Spreigl* notice?

### ANALYSIS

Since this appeal follows the trial court's denial of post-conviction relief, the appellate court's scope of review is limited to determining whether the evidence is sufficient to support the trial court's findings. *Hanson v. State*, 344 N.W.2d 420, 423 (Minn.Ct.App.1984). Further, the court must also apply the "harmless error beyond a reasonable doubt test." *Id.* See *Hauwiller v. State*, 295 N.W.2d 641, 643 (Minn.1980).

### I.

Appellant first argues that he did not receive a *Rasmussen* hearing notice, was not informed of his right to an evidentiary hearing, and received no hearing. The dispute concerns appellant's incriminatory statement about a legal file taken from Zahorsky's car four days prior to the assault. Appellant claims the trial court should have granted a continuance to prevent prejudice. However, his alleged re-

quest for a continuance is not contained in the record.

Minn.R.Crim.P. 7.01 requires the prosecution to notify the defendant of any evidence, statements, confessions against him and/or of any identification procedures used where a jury trial is to be held.

Such written notice may be given either personally or by ordinary mail to the defendant's * * * last known residential or business address * * *.

*Id.*

The post-conviction court found the trial court did not err in ruling the *Rasmussen* notice was properly served. The original notice and mailing affidavit are included in the record and support this finding.

The post-conviction court noted:

If notice was never received, as Defendant claims, it was then a matter of judicial discretion to grant a continuance. * * *

*See* Comments, Minn.R.Crim.P. 7.01.

In *State v. Huber,* 275 Minn. 475, 481, 148 N.W.2d 137, 142 (1967) the supreme court noted that the general rule is, "[I]n cases where a convicted defendant urges that a new trial be ordered because the court refused to grant a continuance * * * the matter is within the discretion of the trial court, and an appellate court will reverse only for a clear abuse of that discretion." The test then is whether the denial of a continuance is so prejudicial as to constitute a denial of due process requiring reversal of his conviction. *Id.*

The statements objected to deal with another incident prior to the offense for which appellant was convicted. There was eyewitness testimony that appellant was driving the car that hit Zahorsky. Further, the post-conviction court noted that appellant ably defended himself at trial, showing a continuance was not warranted. We find no prejudice that requires reversal.

## II.

Appellant argues that the State failed to comply with *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), now codified as Minn.R.Crim.P. 7.02, to give him notice of evidence of telephone calls, letters and a missing legal file which it intended to introduce. The trial court ruled that the evidence was admissible without written notice. The post-conviction court agreed.

Admission of evidence to establish a defendant's motive for a crime and relationship between defendant and victim is not subject to the *Spreigl* notice requirement. *State v. Black,* 291 N.W.2d 208, 215 (Minn. 1980). In *Black,* there the court quoted with approval its decision in *State v. Boyce,* 284 Minn. 242, 170 N.W.2d 104 (1969):

We do not intend by our decision in *State v. Spreigl* * * * to require a "Spreigl notice" as a condition to the admissibility of evidence bearing directly on the history of the relationship existing between one accused of murder and the victim.

*Id.* at 260, 170 N.W.2d at 115. The trial court admitted evidence of the missing file, anonymous phone calls and letters to establish a relationship or connection between the victim and the accused.

In *State v. Thomas,* 360 N.W.2d 458, 459 (Minn.Ct.App.1985) this court held that even if evidence was *Spreigl* evidence, but the defendant was aware of it, the trial court would not be abusing its discretion in admitting relevant evidence. The *Spreigl* notice procedure guards against the injustice of using evidence against an accused who is unprepared to demonstrate that such evidence is unsubstantiated. *State v. Doughman,* 384 N.W.2d 450, 456 (Minn. 1986). A trial court's admission of other crimes or bad acts will not be reversed on appeal unless an abuse of discretion is clearly shown. *Id.* at 454.

■ The complaint states that Zahorsky and Mjolhus believe appellant harassed them on a number of occasions, indicating that evidence relating to this issue would be presented at trial, although the missing file was not specifically mentioned in the complaint. In addition, it is clear from appellant's cross-examination of the wit-

**58**

nesses that he expected the testimony. He had access to Zahorsky's and Mjolhus' formal statements to police prior to trial. His defense showed he was familiar with the content of the statements and that they contained information about phone calls, letters disseminated to neighbors and the missing file. Further, appellant himself testified that he had access to the police investigation files, which included a copy of the letter sent to Zahorsky's neighbors.

The record clearly shows appellant was familiar with the evidence introduced and had ample opportunity to rebut the testimony. He has not shown admission of this evidence was a clear abuse of discretion.

■ Finally, even if the trial court did err in admitting unnoticed *Spreigl* evidence and by not conducting an evidentiary hearing, the appellant must also establish that the rulings result in prejudice and constitute reversible error. *State v. Darveaux,* 318 N.W.2d 44, 48 (Minn.1982) (quoting *State v. Loebach,* 310 N.W.2d 58, 64 (Minn. 1981)). In *Loebach,* the supreme court held that reversal is warranted only when the error "substantially influences the jury to convict." 310 N.W.2d at 64. This is not the case here.

Evidence of appellant's guilt in this case was based for the most part on eyewitness testimony. Appellant's former girlfriend, whom he had dated for seven months, identified him and his car. The victim also identified appellant as the driver of the car that struck him.

### DECISION

■ There is sufficient evidence to support the verdict and the findings of the post-conviction court. The trial court did not err in refusing to grant a continuance where a *Rasmussen* notice was properly served. The evidence objected to by appellant is not subject to the *Spreigl* notice requirement.

Affirmed.